UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HUMBERTO LUNA DELGADO,

               Petitioner,                      Case No.: 25-cv-1076

v.

JOSEPH E. FREDEN, in his official capacity as
ICE Deputy Field Office Director; KRISTI NOEM,
in her official capacity as Secretary of Homeland
Security, and TODD M. LYONS, in his official
capacity as Acting Director of Immigration and
Customs Enforcement, and PAMELA BONDI,
in her official capacity as Attorney General of
the United States,

               Respondents.

_____

## **VERIFIED PETITION FOR A WRIT OF HABEAS CORPUS**

## **INTRODUCTION**

1.     Petitioner Humberto Luna Delgado is a 49-year-old native and citizen of Mexico who entered the United States without inspection on or about December 1, 2010, and has not left the United States since then.

2.     Mr. Luna Delgado is currently in removal proceedings and has filed a fear-based application for relief.

3.     On or about August 28, 2025, an immigration judge determined that Mr. Luna Delgado was detained at the Buffalo Federal Detention Facility ("BFDF") under 8 U.S.C. § 1226(a) and granted him a bond in the amount of $10,000.

4.     Almost immediately, the Department of Homeland Security ("DHS") gave notice to the immigration court that it intended to appeal that decision and invoked 8 C.F.R. §

1003.19(i)(2) which automatically stays the immigration judge's bond decision.

5.      DHS based its appeal on the theory that Mr. Luna Delgado did not fall under 8 U.S.C. § 1226(a) but rather fell under 8 U.S.C. § 1225(b) which requires detention unless DHS grants the individual parole. 8 U.S.C. § 1225(b) also precludes immigration judges from issuing bonds.

6.      In its substantive brief to the Board of Immigration Appeals, DHS also relied on a Board of Immigration Appeals decision called *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), issued by the Board on September 5, 2025, after the immigration judge had granted bond. This decision said that those who are classified as "entry without inspection" are now "applicants for admission" under 8 U.S.C. § 1225(b) and not eligible to apply for bond in front of an immigration judge, even if they are not caught near the border and have been in the United States for an extended period of time. Historically, these individuals were subject to the detention rules under 8 U.S.C. § 1226(a), which permitted them to apply for a bond in front of an immigration judge.

7.      When DHS issued Mr. Luna Delgado, who has been in the United States since 2010, his Notice to Appear on or about July 9, 2025, they designated him as falling under 8 U.S.C. 1226(a) by marking the box on his NTA that reads, "You are an alien present in the United States who has not been admitted or paroled."

8.      Mr. Luna Delgado, who would otherwise be eligible to apply for a bond in front of an immigration judge, is now not eligible for any bond and must stay detained for the duration of his immigration court proceedings, including any appeal if he loses.

9.      For these reasons, Mr. Luna Delgado requests that the Court declare that Mr. Luna Delgado is detained under 8 U.S.C. § 1226(a). He further requests that the Court reinstate his prior

bond amount as he is prepared to pay it.

## JURISDICTION

10. This action arises under the Constitution of the United States, the APA, and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq.

11. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

12. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et. seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

13. Venue is proper because Petitioner is detained at the Buffalo Federal Detention Facility ("BFDF") in Buffalo, New York, which is within the jurisdiction of this District.

14. Venue is proper in this District because Respondents are officers, employees, or agencies of the United States, a substantial part of the events or omissions giving rise to Petitioner's claims occurred in this District, and Petitioner resides in this District. There is no real property involved in this action.  28 U.S.C. § 1391(e).

## REQUIREMENTS OF 28 U.S.C. § 2243

15. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." Id. (emphasis added).

16.     Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## EXHAUSTION OF ADMINSTRATIVE REMEDIES

17.     To the extent required, Petitioner has exhausted his administrative remedies as required by law and his only remedy is by way of this judicial action. *Mathon v. Feeley*, No. 20 CV-07105-FPG, 2021 U.S. Dist. LEXIS 260853, at *6-7 (W.D.N.Y. Oct. 13, 2021). In addition, the administrative agency has already predetermined that Petitioner is not eligible for any relief through the agency. *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Therefore, any attempt to seek relief through the agency would be futile.

## PARTIES

18.     Petitioner is currently detained by the Department of Homeland Security at the BFDF. He is currently in removal proceedings.

19.     Respondent, Joseph E. Freden, is the ICE Deputy Field Office Director and is the senior ICE officer in charge of the BFDF in Batavia, New York. He is Chavez-Chilel's immediate custodian, and, upon information and belief, resides in the Western District of New York.

20.     Respondent Todd Lyons is sued in his official capacity as Acting Director of the United States Immigration and Customs Enforcement. In this capacity, Respondent Lyons oversees all detention of noncitizens held in ICE custody and is a legal custodian of petitioner with the authority to release him.

21.     Respondent Kristi Noem is sued in her official capacity as Secretary of the U.S.

Department of Homeland Security (DHS). In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Noem is a legal custodian of Petitioner.

22.     Respondent Pam Bondi is sued in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the Board of Immigration Appeals.

## STATEMENT OF FACTS

23.     Petitioner is a native and citizen of Mexico.

24.     On or about July 9, 2025, DHS issued Petitioner a Notice to Appear ("NTA"). A true and accurate copy of the NTA is attached as **Exhibit A**.

25.     In the NTA, DHS alleges that Petitioner entered the United States without inspection on or about December 1, 2010, and charges him with violating Immigration and Nationality Act § 212(a)(6)(i), i.e., that he is an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

26.     In the NTA, DHS designated his status as falling under 8 U.S.C. § 1226(a) by checking the box that states, "You are an alien present in the United States who has not been admitted or paroled."

27.     On or about August 28, 2025, an immigration judge issued an order declaring that Petitioner fell under 8 U.S.C. § 1226(a) and granted him a bond of $10,000. A true and accurate

copy of the bond order is attached as **Exhibit B**.

28.     In her written order dated September 25, 2025, the immigration judge explained that her decision to grant this bond was based on the facts that Petitioner has lived in the United States continuously for over fourteen years, had a job since 2011, and has filed taxes. The immigration judge also noted that Petitioner "has been married to a Lawful Permanent Resident since March 8, 2022, and is the caregiver to his United States citizen three-year-old granddaughter." A true and accurate copy of the written decision, dated September 25, 2025, is attached as **Exhibit C**.

29.     On or about August 28, 2025, DHS filed Form EOIR-43 entitled Notice of ICE Intent to Appeal Custody Redetermination. A true and accurate copy of this form is attached as **Exhibit D**.

30.     This form triggers an automatic stay of the immigration judge's custody redetermination decision under 8 C.F.R. § 1003.19(i)(2). *See* **Exhibit D**.

31.     On or about September 12, 2025, DHS filed its notice of appeal and brief with the Board of Immigration Appeals. A true and accurate copy of the notice of appeal, EOIR-43 Sernior Legal Official Certification, and accompanying brief is attached as **Exhibit E**.

32.     DHS based its appeal on the claim that Petitioner was detained under 8 U.S.C. § 1225(b), which precludes an immigration judge from issuing a bond, instead of 8 U.S.C. § 1226(a).

33.     Upon information and belief, Petitioner does not have a criminal record.

34.     Upon information and belief, DHS has not claimed either in its appeal or in other settings that he is a danger to persons or property or a flight risk. Its entire basis for appealing this case is that it contends that Petitioner should be classified under 8 U.S.C. § 1225(b) and not 8 U.S.C. § 1226(a).

## LEGAL BACKGROUND

**PETITIONER'S DETENTION VIOLATES PETITIONER'S DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION.**

**I.      This Court has jurisdiction to hear this matter.**

35.     As noted above, "Federal courts have jurisdiction to review habeas petitions filed y immigration detainees who assert that they are 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Artiga v. Genalo*, No. 25-CV-5208 (OEM), 2025 U.S. Dist. LEXIS 196847, at *8 (E.D.N.Y. Oct. 5, 2025), quoting 28 U.S.C. § 2241(c)(3). Therefore, this Court has jurisdiction to hear this matter.

**II.      Petitioner is not required to exhaust his administrative remedies.**

36.     Petitioner is not required to exhaust his administrative remedies by seeking a bond or requesting discretionary parole.

37.     While courts generally require exhaustion of administrative remedies before detainees may challenge their detention in court via a petition for a writ of habeas corpus, exhaustion is a prudential matter, not a statutory requirement. *Artiga*, 2025 U.S. Dist. LEXIS 196847, at *8-9.

38.     Exhaustion of administrative remedies in certain circumstances, including when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) citing *Able v. U.S.*, 88 F.3d 1280, 1288 (2d Cir. 1996).

39.     Here, two of these exceptions apply. First, any attempt to seek administrative

remedy will be futile. In *Matter of Yajure Hurtado*, the Board of Immigration Appeals (the "Board") ruled for the first time that anyone who is classified as an "inadmissible alien who establishes that he or she has been present in the United States for over 2 years" can be detained under 8 U.S.C. § 1225(b)(2) and "shall be detained for a proceeding under section 240." *Id.* at 219-220. The consequence of this decision is that individuals who were historically classified as entry without inspection or EWI and eligible to apply for a bond before an immigration judge under 8 U.S.C. 1226(a) are now ineligible for an immigration judge-issued bond. Therefore, any attempt to pay an already-issued bond or seek relief before the EOIR would be futile.

40.     Second, this petition raises a substantial constitution question, i.e., whether DHS has violated his due process rights under the U.S. Constitution in detaining him. Therefore, Petitioner should not be required to exhaust his administrative remedies.

### III.     PETITIONER IS DETAINED UNDER 8 U.S.C. § 1226(a).

41.     The next issue is to determine what section of the Immigration and Nationality Act ("INA") governs Petitioner's detention.

42.     Petitioner's detention is governed by 8 U.S.C. § 1226(a).

### A.  Background of 8 U.S.C. §§ 1225 and 1226.

43.     Two sections of Immigration and Nationality Act govern detention of non-citizens who have not received a final order of removal: 8 U.S.C. § 1225 and 8 U.S.C. § 1226.

44.     8 U.S.C. § 1225 governs those who are considered "applicants for admission." 8 U.S.C. § 1225(a)(1). This section states that "[a]n alien present in the United States who has not been admitted or who arrives in the United States. . . shall be deemed for purposes of this chapter an applicant for admission." Applicants for admission under 8 U.S.C. § 1225 are divided into two categories: those covered by 8 U.S.C. § 1225(b)(1) and hose covered by 8 U.S.C. § 1225(b)(2).

45.     8 U.S.C. § 1225(b)(1) generally applies to those noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." This section also applies to other aliens who receive a special designation by the Attorney General of the United States. 8 U.S.C. § 1225(b)(1)(A)(iii). This is known more commonly as "expedited removal."

46.     Noncitizens who fall under 8 U.S.C. § 1225(b)(1) are subject to immediate removal unless they make a fear-based claim. Upon making that claim, if they pass a credible fear interview, they are put into removal proceedings where their fear-based application is considered. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Noncitizens who either do not make a fear-based claim or do not make a credible fear-based claim are detained until removal. 8 U.S.C. §§ 1225(b)(1)(A)(ii), (B)(iii)(IV). Those who make a fear-based claim are detained while an immigration court considers the non-citizen's claim. *Jennings*, 583 U.S. at 287 citing 8 U.S.C. § 1225(b)(1)(B)(ii).

47.     8 U.S.C. § 1225(b)(2) is a general "'catchall provision' that applies to all other applicants." *J.U. v. Maldonado*, No. 25-CV-04836 (OEM), 2025 U.S. Dist. LEXIS 191630, at *12 (E.D.N.Y. Sep. 29, 2025) quoting *Jennings*, 583 U.S. at 285. Those detained under this section are commonly known as "arriving aliens."

48.     8 U.S.C. § 1225(b)(2)(A) provides that: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" while the non-citizen is in removal proceedings under 8 U.S.C. § 1229a.

49.     Detention is mandatory under 8 U.S.C. § 1225. But DHS may grant anyone who falls under 8 U.S.C. § 1225(b) temporary parole on a case-by-case and individualized basis. But when the purposes of the parole have been accomplished and/or the terms of that parole are

concluded, the individual is returned to detention. *J.U.*, 2025 U.S. Dist. LEXIS 191630, at *13-14. Those designated as applicants for admission are not eligible to apply for a bond before an immigration judge.

50. Noncitizens who fall under 8 U.S.C. § 1226 fall under one of two subsections here as well: 8 U.S.C. § 1226(a) and 8 U.S.C. § 1226(c).

51. "Section 1226(a) governs a separate non-mandatory detention scheme and provides for the 'default rule' for detaining and removing aliens 'already present in the United States.'" *J.U.*, 2025 U.S. Dist. LEXIS 191630, at *14 quoting *Jennings*, 583 U.S. at 303.

52. This section provides that "on a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

53. "While that decision is pending, the Attorney General may "continue to detain the arrested alien," "release the alien on bond of at least $1,500," or "release the alien on conditional parole." 8 U.S.C. § 1226(a)(1)-(2).

54. Finally, 8 U.S.C. § 1226(c) contains several "exceptions for persons 'who fall[ ] into one of the enumerated categories involving criminal offenses and terrorist activities.'" *J.U.*, 2025 U.S. Dist. LEXIS 191630, at *14 quoting *Jennings*, 583 U.S. at 303. Detention is mandatory for those who fall under 8 U.S.C. § 1226(c).

55. But even those detained under 8 U.S.C. § 1226(c) are entitled to a bond hearing under the Due Process Clause of the Fifth Amendment to the U.S. Constitution after the individual has experienced prolonged detention. *See Black v. Dir. Thomas Decker*, 103 F.4th 133 (2d Cir. 2024); *Cantor v. Freden*, 761 F. Supp. 3d 630, 635-41 (W.D.N.Y. 2025).

56. An NTA issued by the DHS can indicate the non-citizen's detention status. The

NTA has specific boxes for those who fall under 8 U.S.C. § 1225(b)(1) and (b)(2). Those under 8 U.S.C. § 1225(b)(1) fall under the box that states, "Section 235(b)(1) order was vacated pursuant to: [ ] 8 CFR 208.30   [ ] 8 CFR 235.3(b)(5)(iv)." Those under 8 U.S.C. 1225(b)(2) fall under the box that states, "You are an arriving alien." Finally, those who fall under 8 U.S.C. § 1226(a) fall under the box entitled "You are an alien present in the United States who has not been admitted or paroled."

### B. Petitioner is detained pursuant to 8 U.S.C. § 1226(a).

57.    Petitioner is detained pursuant to 8 U.S.C. § 1226(a) for several reasons.

58.    First, Petitioner has been in the United States since 1999. He was given an NTA in March 2025 with the box marked "You are an alien present in the United States who has not been admitted or paroled." *See J.U.*, 2025 U.S. Dist. LEXIS 191630, at *2-3 (noting that this is evidence of classification under 8 U.S.C. 1226(a)).

59.    In addition, the NTA charges him with removal under INA § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i). *See J.U.*, 2025 U.S. Dist. LEXIS 191630, at *2-3 (noting that this is evidence of classification under 8 U.S.C. 1226(a)).

60.    In addition, Petitioner does not have a criminal record. Therefore, he cannot be detained pursuant to 8 U.S.C. § 1226(c). Therefore, pursuant to DHS's own determination, he is detained under 8 U.S.C. § 1226(a). *See J.U.*, 2025 U.S. Dist. LEXIS 191630, at *19 citing *Mahamudul Hasan v. Crawford*, No. 1:25-cv-1408 (LMB/IDD), 2025 U.S. Dist. LEXIS 184734, 2025 WL 2682255, at *8 (Ed. Va. Sept. 19, 2025) ("Given the significant distinction between being paroled into the United States under § 1182(d)(5)(A) and being released on recognizance under § 1226(a)(2)(B), DHS's consistent citations to § 1226(a) on [petitioner's] paperwork does not support the argument that the federal respondents actually intended for him to be paroled into

the United States pursuant to § 1182(d)(5)(A).").

61.     In addition, Petitioner does not fall into any other category.

62.     DHS makes no allegation that he ever was under expedited removal under 8 U.S.C. § 1225(b)(1), which is referred to generally as "expedited removal." In addition, since he arrived in 1999, he cannot be subject to expedited removal as a noncitizen must be in the country for less than two years to qualify for expedited removal. *See Make the Road New York v. Noem*, No. 25-190, 2025 WL 2494908, at *23 (D.D.C. Aug. 29, 2025).

63.     In addition, Petitioner cannot be subject to mandatory detention under 8 U.S.C. § 1225(b)(2), including because, as a person already present in the United States, Petitioner is not presently "seeking admission" to the United States. *See Materano v. Arteta*, 2025 U.S. Dist. LEXIS 179608, at *30-31 (S.D.N.Y. Sep. 9, 2025) (explaining that the terms "arriving" and "seeking admission" are present-tense words and do not apply to an individuals who have been in the country for several years) citing *Benitez v. Francis*, 2025 U.S. Dist. LEXIS 157214, at *21-23 (S.D.N.Y. Aug. 8, 2025) (also holding that expanding detention under 1225(b) would greatly expand mandatory detention beyond what how DHS has traditionally treated this statute and that enforcing it this way would negate 8 U.S.C § 1226(a)).

64.     Respondent argues that Petitioner is detained under 8 U.S.C. § 1225(b) as an applicant for admission pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), and is therefore ineligible for bond, this argument fails.

65.     In *Yajure Hurtado*, for the first time, the Board of Immigration Appeals (the "Board") held that anyone who is classified as an "inadmissible alien who establishes that he or she has been present in the United States for over 2 years" can be detained under 8 U.S.C. § 1225(b)(2) and "shall be detained for a proceeding under section 240." *Id.* at 219-220. The

consequence of this decision is that individuals who were historically classified as entry without inspection or EWI and eligible to apply for a bond before an immigration judge under 8 U.S.C. 1226(a) are now ineligible for an immigration judge-issued bond. But the Board's reversal and newly revised interpretation of the detention statutes are not entitled to any deference. *See Loper Bright Ent. v. Raimondo*, 603 U.S. 369, 412-13 (2024). Numerous courts around the country have rejected the reasoning in *Yajure Hurtado* and held that those who have been in the United States longer than two years are detained under 8 U.S.C. § 1226(a) and are entitled to a bond hearing before an immigration judge at minimum. *Artiga*, 2025 U.S. Dist. LEXIS 196847, at *15-24; *Orellana v. Moniz*, Civil Action No. 25-cv-12664-PBS, 2025 U.S. Dist. LEXIS 196282, at *13-14 (D. Mass. Oct. 3, 2025) (collecting cases).

66.     Furthermore, the government's policy in *Yajure Hurtado* renders other statutes, e.g., the Laken Riley Act, superfluous. *J.U.*, 2025 U.S. Dist. LEXIS 191630, at *22-24.

67.     Upon information and belief, Petitioner was not, at the time of arrest, paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A), and, therefore, Petitioner could not "be returned" under that provision to mandatory custody under 8 U.S.C. § 1225(b). Petitioner is therefore not subject to mandatory detention under § 1225.

68.     In addition, Petitioner is not lawfully subject to mandatory detention under 8 U.S.C. § 1226(c), including because he has not been convicted of any crime that triggers such detention. *See Demore v. Kim*, 538 U.S. 510, 513-14, 531 (2003) (allowing mandatory detention under § 1226(c) for brief detention of persons convicted of certain crimes and who concede removability).

69.     Accordingly, Petitioner is subject to discretionary detention under 8 U.S.C. § 1226(a) based on Respondents' treatment of Petitioner and the plain text of the statue.

70.     Petitioner received a bond hearing and a bond by an immigration judge as someone

detained under 8 U.S.C. § 1226(a). Petitioner should be allowed to pay this bond to secure his release from custody.

IV.    **THE AUTOMATIC STAY UNDER 8 C.F.R. § 1003.19(i)(2) VIOLATES THE PETITIONER'S PROCEDURAL AND SUBSTANTIVE DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION AND IS UNCONSTITUTIONAL BOTH FACIALLY AND AS APPLIED.**

71.    8 C.F.R. § 1003.19(i)(2) provides that:

> Automatic stay in certain cases. In any case in which DHS has determined that an alien should not be released or has set a bond of $ 10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR-43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board. The decision whether or not to file Form EOIR-43 is subject to the discretion of the Secretary.

72.    This regulation has been constitutionally problematic since its inception as an interim regulation and continues to be.[1]

73.    With respect to the automatic stay, there are two separate detentions at issue.

74.    Due process requirements must be satisfied for both detentions.

75.    The first detention was based on ICE's initial detention of Petitioner, which was conducted under 8 U.S.C. § 1226(a).

76.    Petitioner received due process by receiving a bond hearing from an immigration judge. The consequence of that hearing is that the immigration judge gave Petitioner a $10,000 bond.

77.    The second detention took place when ICE invoked 8 C.F.R. § 1003.19(i)(2), which automatically stayed the immigration judge's decision.

---

[1] A history of this regulation can be found at *Günaydin v. Trump*, 2025 U.S. Dist. LEXIS 99237, at *8-14 (D. Minn. 2025) and *Torralba v. Knight*, No. 2:25-cv-01366-RFB-DJA, 2025 U.S. Dist. LEXIS 173272, at *8 (D. Nev. Sep. 5, 2025)

78.     Under this regulation, the decision to invoke the automatic stay provision is left solely to the discretion of the Secretary of Homeland Security based solely on his or her determination that the alien should not be released or where the IJ has set a bond of $10,000 or more.

79.     The regulation contains no requirement for DHS to apply for a discretionary stay with the Board. The regulation contains no provision that allows Petitioner any review of this determination by the Secretary. The regulation also contains no requirement that the Secretary and/or his designee justify his or her decision or meet any standard to invoke this automatic stay provision or any process that the official must follow to invoke the automatic stay.

80.     This violates Petitioner's procedural and substantive due process rights because it allows an agency official to unilaterally detain a person after an immigration judge has granted a bond with no check on that agency official.

### A.  Petitioner's detention and the application of the automatic stay violates his procedural due process rights under *Mathews v. Eldridge.*

81.     The Due Process Clause of the Fifth Amendment of the U.S. Constitution prevents the "Government from depriving any person of 'life liberty or property, without due process of law.'" *J.U.*, 2025 U.S. Dist. LEXIS 191630, at *27. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

82.     It is well-established that the Due Process clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

83.     The Second Circuit applies the *Mathews v. Eldridge* three-factor balancing test to determine whether there is adequate due process in civil immigration confinement. *Velasco Lopez*

*v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). This test requires courts to consider (1) the private interest that will be affected by the government action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest. *Mathews*, 424 U.S. at 335.

84.     With respect to the first factor, "the most significant liberty interest there is, is the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851.

85.     Petitioner has been in the United States for almost 25 years. Per the NTA issued to him on or about July 9, 2025, DHS determined that he was detained under 8 U.S.C. § 1226(a). He properly applied for a custody redetermination in front of an immigration judge. The immigration judge agreed with his claim that he was detained under 8 U.S.C. § 1226(a) and properly issued a bond for $10,000.

86.     For its part, DHS argued that Petitioner was detained under 8 U.S.C. § 1225(b) based on a dramatic reinterpretation of 8 U.S.C. § 1225(b)(2), one rejected by the immigration judge.

87.     While DHS has the right to appeal against that decision, Mr. Luna Delgado has not been allowed to post that bond because of 8 C.F.R. § 1003.19(i)(2). Based on a unilateral decision by DHS, the immigration judge's decision was stayed, and Petitioner's liberty interest was directly impacted with no remedy.

88.     In addition to the broader impact against Petitioner, he has a strong personal liberty interest. The immigration judge found that he was a caregiver to his three-year-old granddaughter. **Exhibit C**.

89.     Therefore, Petitioner has established his liberty interest, and this factor weighs heavily in favor of Petitioner.

90. The second factor concerns erroneous deprivation of Petitioner's "interest through the procedures used, and the probable value, if any, of additional or substitute and probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335.

91. The "automatic stay provision creates an extreme risk of erroneous and arbitrary confinement." *Torralba v. Knight*, No. 2:25-cv-01366-RFB-DJA, 2025 U.S. Dist. LEXIS 173272, at *29 (D. Nev. Sep. 5, 2025). Both facially and as applied, there is an extraordinarily high risk of "erroneous deprivation of a noncitizen's liberty interest when DHS invokes the automatic stay." *Id.* at 29-30.

92. First, the regulation gives no identifiable standard "that would guide any purported due process procedures." *Id.* at 30. "Such an undefined and subjective standard clearly creates a likelihood of arbitrary and capricious application." *Id.*

93. Second, the likelihood of erroneous deprivation is also very high because the automatic stay is usually only invoked after the immigration judge has already issued a bond after the non-citizen has had to establish by clear and convincing evidence that he or she is not a danger to persons or property and not a flight risk. "As such, the stay is effectively a unilateral automatic stay pending appeal as of right afforded to the losing party—the agency official who has just failed to present evidence or argument sufficient to convince a neutral decisionmaker that detention is warranted." *Id.*

94. The automatic stay amounts to an unchecked power vested in DHS to "prolong an individual's detention" and "cannot . . . be a carefully limited exception to an individual's right to liberty" required by the Due Process Clause. *Id.*

95. This regulation outlines no discernible process or standard that the Agency must follow "other than a vague requirement that the stay be warranted under the facts and law." *Id.* at

30-31.

96.     The automatic stay is very different from other types of stays filed to challenge a judge's order. In most cases, the applicant is required to show a likelihood of success on the merits and irreparable harm to receive a stay. *Id.* at 31.

97.     In addition, there is a problematic conflict of interest with the automatic stay. DHS constitutes both the "unreviewable discretionary authority" deciding to invoke the automatic stay and the prosecuting authority appealing the immigration judge's decision. *Id.* This makes "erroneous deprivation not just a risk, but likely." *Id.*

98.     There is a process in the regulation that allows DHS to seek an emergency stay from the Board on an emergency basis that can preserve the government's interest in preventing an erroneous release." *Id.* at 32.

99.     Therefore, the second *Mathews* factor also weighs heavily in favor of the Petitioner.

100.    With respect to the third factor, the government's interest and burden of additional process, this also favors the Petitioner.

101.    Indeed, the government has a broad interest in applying a consistent enforcement of immigration laws, protecting the public from dangerous criminal aliens, and securing an alien's ultimate removal if it comes to that point. *Id* at 33.

102.    But an immigration judge has already found that he is not a danger to persons or property and not a flight risk.

103.    Indeed, the only basis DHS has asserted for appealing the immigration judge's decision is that it believes that Petitioner should be detained under 8 U.S.C. § 1225(b) instead of 8 U.S.C. § 1226(a). It has made no allegation that Petitioner is either a danger or a flight risk.

104.    As demonstrated above, Petitioner argued, and the immigration judge agreed, that

he is detained pursuant to 8 U.S.C. § 1226(a).

105.    But even if the Court rejects this contention, this factor still does not rescue the automatic stay because DHS can still file for a normal or emergency stay with the Board.

106.    Therefore, the third factor heavily favors the Petitioner.

107.    As all three factors favor Petitioner, the Court should hold that the implementation of the automatic stay as against the Petitioner violates his procedural due process rights.

>   **B.  The application of the automatic stay violates the substantive due process rights of Petitioner.**

108.    The application of the automatic stay violates Petitioner's substantive due process rights for two reasons.

109.    First, the Fifth Amendment states that no person shall be deprived of liberty without due process of law.

110.    While the government can detain individuals, there just be "adequate procedural safeguards" in criminal detention and, in non-criminal detentions, some special justification that "outweighs an individual's constitutionally protected interest in avoiding physical restraint." *Fernandez v. Lyons*, No. 8:25CV506, 2025 U.S. Dist. LEXIS 171020, at *10 (D. Neb. Sep. 3, 2025).

111.    DHS cannot provide any special justification for applying the automatic stay in this case. Its only argument is that it believes that Petitioner should be subject to mandatory detention under 8 U.S.C. § 1225(b) instead of 8 U.S.C. § 1226(a). There is no allegation that Petitioner is either a danger or a flight risk.

112.    In addition, as noted above, numerous federal courts have already rejected this theory. And even if they had not, Petitioner is being held under the automatic stay at this juncture after a neutral factfinder ordered a bond. "Respondents' interest in securing his presence via

19

detention 'in contravention of the order of a neutral fact-finder[] does not outweigh the liberty interest at stake.'" *Maza v. Hyde*, Civil Action No. 1:25-cv-12407-IT, 2025 U.S. Dist. LEXIS 205956, at *15 (D. Mass. Oct. 20, 2025), quoting *Jacinto v. Trump*, 2025 U.S. Dist. LEXIS 160314, 2025 WL 2402271, at *4 (D. Neb. Aug. 19, 2025).

115.    Therefore, the automatic stay also violates Petitioner's substantive due process rights.

## V.    THE AUTOMATIC STAY IS ULTRA VIRES AND VIOLATES THE IMMIGRATION AND NATIONALITY ACT.

116.    8 U.S.C. § 1226(a) gives the Attorney General authority to detain or release non-citizens. The Attorney General may delegate that authority to other officer, employee, or agency of the Department of Justice, e.g., an immigration judge. *Maza*, 2025 U.S. Dist. LEXIS 205956, at *16.

117.    The automatic stay gives DHS authority to override an immigration judge's decision by simply submitting a form.

118.    But DHS is not a part of the U.S. Department of Justice. It is a separate executive agency.

119.    This enables DHS to usurp the authority of the Department of Justice in making detention and bond determinations.

120.    Therefore, this regulation exceeds Congressional authority. *Id.*

121.    The proper remedy here is to declare that Petitioner is detained under 8 U.S.C. § 1226(a) and lift the automatic stay so that Petitioner can pay his bond.

## CLAIMS FOR RELIEF

### COUNT ONE

**Violation of the Immigration and Nationality Act
(Petitioner is detained under 8 U.S.C. § 1226(a)).**

122.    Petitioner alleges and incorporates all prior paragraphs above.

123.    DHS claims that Petitioner is detained under 8 U.S.C. § 1225(b).

124.    DHS is appealing the immigration judge's bond decision that he is detained under

8 U.S.C. § 1226(a) based on *Matter of Yajure Hurtado* and continuing his detention under the

automatic stay on that basis.

125.    Therefore, Petitioner requests that the Court declare him detained under 8 U.S.C. §

1226(a) so that he can pay his bond and be released from detention.

### COUNT TWO

**Violation of Fifth Amendment Right to Procedural Due Process
(8 C.F.R. § 1003.19(i)(2) violates Petitioner's Procedural Due Process Rights.)**

126.    Petitioner alleges and incorporates all prior paragraphs above.

127.    The automatic stay violates Petitioner's procedural due process rights because, in

part, there is no review of DHS's decision to invoke the automatic stay, no standard that DHS must

meet or explanation DHS must give to invoke the automatic stay, and it contravenes an

immigration judge's decision to grant bond.

128.    Petitioner can demonstrate under the *Mathews* test that his procedural due process

rights have been violated by the automatic stay.

129.    Therefore, Petitioner requests that the Court declare it unconstitutional as applied

to Petitioner and lift it to allow Petitioner to pay his bond.

21

## COUNT THREE

**Violation of Fifth Amendment Right to Substantive Due Process
(8 C.F.R. § 1003.19(i)(2) violates Petitioner's Procedural Due Process Rights.)**

130.    Petitioner alleges and incorporates all prior paragraphs above.

131.    The automatic stay violates Petitioner's substantive due process rights because DHS is overruling a neutral decision maker regarding Petitioner's detention and can provide no special justification for implementing the automatic stay, especially since DHS has other avenues of relief, e.g., normal or emergency requests for stay to the Board.

132.    Therefore, Petitioner requests that the Court declare it unconstitutional and lift it to allow Petitioner to pay his bond.

## COUNT FOUR

**The Automatic Stay under 8 C.F.R. § 1003.19(i)(2) constitutes an Ultra Vires action by DHS under the Immigration and Nationality Act**

133.    Petitioner alleges and incorporates all prior paragraphs above.

134.    The automatic stay constitutes an ultra vires action by DHS in that the INA gives the Attorney General to determine bond and detention.

135.    DHS is not a part of the DOJ, and, since the automatic stay gives DHS unilateral authority to stay an immigration judge's decision to grant bond, this regulation contravenes Congressional authority and is, therefore, ultra vires.

136.    Therefore, Petitioner requests that the Court declare it void as ultra vires.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to grant the following:

1.    Assume jurisdiction over this matter;

2.      Order that Petitioner shall not be transferred outside this District during the pendency of this action;

3.      Adjudicate this petition pursuant to 28 U.S.C. § 1657 which requires that the Court expedite consideration of any action brought under 28 U.S.C. Chapter 153, which governs habeas petitions.

4.      Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days pursuant to 28 U.S.C. § 2243.

5.      Issue the Writ of Habeas Corpus (1) Declaring that Petitioner is detained under 8 U.S.C. § 1226(a); (2) Declaring that the automatic stay under 8 C.F.R. § 1003.19(i)(2) is unconstitutional and unlawful; and (3) Lift the automatic stay so that Petitioner can pay the bond issued by the immigration judge and get released from detention.

6.      Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

7.      Grant any further relief this Court deems just and proper.

Dated: October 22, 2025
Buffalo, New York

Respectfully submitted,

_s/ Aaron J. Aisen_
Aaron J. Aisen
Richards and Jurusik Immigration Law
5 Niagara Square
Buffalo, New York 14202
Tel: (585) 478-7728
Fax: (716) 322-5619
aaron@rjimmigrationlaw.com

## <u>VERIFICATION PURSUANT TO 28 U.S.C. § 2242</u>

I represent Petitioner, Arturo Luna Delgado, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated October 22, 2025.

*s/ Aaron J. Aisen*
Aaron J. Aisen

# DEPARTMENT OF HOMELAND SECURITY
## NOTICE TO APPEAR

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

Subject ID:399359632          FINS #:6685464          File No: A226 165 933
                              DOB: 03/25/1976

In the Matter of:                                      Event No:NIB2507000004

Respondent: _____ HUMBERTO   LUNA DELGADO _____ currently residing at:

4250 FEDERAL DRIVE  BATAVIA, NEW YORK, 14020

_____
(Number, street, city, state and ZIP code)                    (Area code and phone number)

☐ You are an arriving alien.

☒ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;
2. You are a native of MEXICO and a citizen of MEXICO ;
3. You arrived in the United States at or near SAN DIEGO,  CA , on or about December 1, 2010 ;
4. You were not then admitted or paroled after inspection by an Immigration Officer.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to:        ☐ 8CFR 208.30     ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

4250 FEDERAL DR RM F108   BATAVIA NY US 14020
_____
(Complete Address of Immigration Court, including Room Number, if any)

on  August 20, 2025  at  09:00 AM   to show why you should not be removed from the United States based on the
      (Date)              (Time) ANDREW J MEINCKE
                          Date: 2025.07.09 14:52:13 -04:00
charge(s) set forth above.       0992007184.CBP          Acting/Patrol Agent in Charge
                                              (Signature and Title of Issuing Officer)

Date: July 09, 2025 _____ Niagara Falls, New York
                                              (City and State)

EOIR — 1 of 3

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/i-589**. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at **http://www.ice.gov/contact/ero**, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

U.S. Citizenship Claims: If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

Upon information and belief, the language that the alien understands is _____SPANISH_____

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____

_____
*(Signature of Respondent)*

_____
Date: _____
*(Signature and Title of Immigration Officer)*

## Certificate of Service

This Notice To Appear was served on the respondent by me on **July 9, 2025**, in the following manner and in compliance with section 239(a)(1) of the Act.

☒ in person ☐ by certified mail, returned receipt # _____ requested ☐ by regular mail

☐ Attached is a credible fear worksheet.

☒ Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the _____SPANISH_____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act. DAVID R BUGENHAGEN

**Refused to Sign**

Date: 2025.07.09 14:50:20 -04:00
0903964031.CBP

**Border Patrol Agent**

*(Signature of Respondent if Personally Served)*          *(Signature and Title of officer)*

EOIR - 2 of 3

Uploaded on: 07/23/2025 Case 3:25-cv-00612-MMW Document 2 Case Filed 07/29/25 Page 27 of 61

## Privacy Act Statement

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

DHS Form I-862 (6/22)



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BATAVIA IMMIGRATION COURT**

Respondent Name:

    LUNA DELGADO, HUMBERTO

To:

    Villarroel Vargas, Jennifer
    P.O. Box 92281
    Washington, DC 20090

A-Number:
226-165-933
Riders:
In Custody Redetermination Proceedings

Date:
08/28/2025

## ORDER OF THE IMMIGRATION JUDGE

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☐  Denied, because



☑  Granted. It is ordered that Respondent be:
    ☐  released from custody on his own recognizance.
    ☑  released from custody under bond of $ 10,000.00
    ☐  other:


☐  Other:

Immigration Judge: GOLOVNIN, LENA 08/28/2025

Appeal: Department of Homeland Security: ☐ waived ☑ reserved
Respondent: ☑ waived ☐ reserved
Appeal Due: 09/29/2025

**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service **|** [ E ] Electronic Service | [ U ] Address Unavailable
To: [ ] Alien | [ ] Alien c/o custodial officer **|** [ E ] Alien atty/rep. | [ E ] DHS
Respondent Name : LUNA DELGADO, HUMBERTO | A-Number : 226-165-933
Riders:
Date: 08/29/2025 By: WARD, FELICIA, Court Staff

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
4250 FEDERAL DRIVE, ROOM F108
BATAVIA, NY  14020


Law Office of Jennifer Vargas, PLLC
Villarroel Vargas, Jennifer
PO Box 92281
Washington, DC  20090


In the matter of            File A 226-165-933      DATE: Sep 25, 2025
LUNA DELGADO, HUMBERTO


\_\_ Unable to forward - No address provided.
\_\_ Attached is a copy of the decision of the Immigration Judge. This decision
   is final unless an appeal is filed with the Board of Immigration Appeals
   within 30 calendar days of the date of the mailing of this written decision.
   See the enclosed forms and instructions for properly preparing your appeal.
   Your notice of appeal, attached documents, and fee or fee waiver request
   must be mailed to:    Board of Immigration Appeals
                         Office of the Clerk
                         5107 Leesburg Pike, Suite 2000
                         Falls Church, VA 22041
\_\_ Attached is a copy of the decision of the immigration judge as the result
   of your Failure to Appear at your scheduled deportation or removal hearing.
   This decision is final unless a Motion to Reopen is filed in accordance
   with Section 242b(c)(3) of the Immigration and Nationality Act, 8 U.S.C. §
   1252b(c)(3) in deportation proceedings or section 240(b)(5)(C), 8 U.S.C. §
   1229a(b)(5)(C) in removal proceedings.  If you file a motion to reopen, your
   motion must be filed with this court:
                         IMMIGRATION COURT
                         4250 FEDERAL DRIVE, ROOM F108
                         BATAVIA, NY  14020
\_\_ Attached is a copy of the decision of the immigration judge relating to a
   Reasonable Fear Review. This is a final order. Pursuant to 8 C.F.R. §
   1208.31(g)(1), no administrative appeal is available. However, you may file
   a petition for review within 30 days with the appropriate Circuit Court of
   Appeals to appeal this decision pursuant to 8 U.S.C. § 1252; INA §242.
\_\_ Attached is a copy of the decision of the immigration judge relating to a
   Credible Fear Review. This is a final order. No appeal is available.
XX Other: Bond Memorandum.


                         E.LANG
                         COURT CLERK
                         IMMIGRATION COURT                        FF
        cc: CHERYL GRUNDY, ASSISTANT CHIEF COUNSEL
            4250 FEDERAL DRIVE
            BATAVIA, NY,  14020

EOIR - 1 of 5

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**UNITED STATES IMMIGRATION COURT**
**BATAVIA  NEW YORK**

**IN THE MATTER OF**                    **In Bond Proceedings**

LUNA DELGADO, HUMBERTO              FILE NUMBER: A226-165-933

**RESPONDENT**

*BOND MEMORANDUM*

*The Court's oral decision was issued before the Board's decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) – issued on September 5, 2025. Pursuant to the Board's clarification in Matter of Yajure Hurtado, Respondent would not be eligible for bond.*

---------------------------------

The respondent is a native and citizen of Mexico.  The Department of Homeland Security ("DHS") commenced removal proceedings on a detained basis by filing a Notice to Appear, dated July 09, 2025, with the Immigration Court (*see* Removal Exh. 1).  The NTA charged the respondent as removable pursuant to section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), as an alien present in the United States without being admitted or paroled or who arrived in the U.S. at any time or place other than as designated by the Attorney General (*see id.*).

On August 28, 2025, this Immigration Court conducted a custody redetermination hearing in the instant matter.  The Court found that the respondent was subject to custody under section 236(a) of the INA, and therefore, the Court had jurisdiction to consider his request for custody redetermination.  After considering the evidence submitted by the parties, and the oral arguments of counsel, the Court set a bond in the amount of $10,000.  DHS appealed the Court's decision to the Board of Immigration Appeals ("the Board").

INA § 236 gives the attorney general primary authority over custody matters.  Within the Department of Justice, the power to hear an initial determination on bond and redetermination lies solely with the Attorney General, the Board, and the immigration judges, to the extent the power is delegated to them by the Attorney General.  The Attorney General has delegated to the immigration judges the ability to redetermine bonds after DHS has set a bond.  The limits of immigration judges' authorities to hear bonds are effectuated by 8 C.F.R § 1003.19.  The initial determination of bond when an individual is in INA § 240 proceedings is restricted. The immigration judge's redetermination of a bond is not limited by either statute or regulation except by those provisions provided in 8 C.F.R. §§ 1003.19, 1235-36.  Considered collectively, an immigration judge retains full jurisdiction over bonds for individuals processed under INA §§ 235

1

and 236 and may issue a ruling regarding mandatory detention or eligibility for bond.  Accordingly, the length of an immigration judge's jurisdiction over bond extends from DHS' issuance or failure to issue a bond until the entry of a final order from the Board.  At the very least, immigration judges retain jurisdiction to determine their own jurisdiction.

Jurisdiction of an immigration judge to hear bond proceedings is a different question than a respondent's objection to mandatory detention under INA § 235.  INA § 235(b)(1)(a)(1) describes the expedited removal process which allows removal of certain aliens directly by DHS without the initiation of INA § 240 proceedings.  In this case, the respondent is not an arriving alien, nor is he charged as one who was intercepted within fourteen days of entry and one hundred miles from the border.  Additionally, the respondent does not appear to be an inadmissible alien whose intention is to enter the credible fear review process. The record also does not demonstrate that the respondent is an inadmissible alien who has been in the United States for less than two years.  Instead, the respondent has been in the United States since November or December of 2010.

Mandatory detention pursuant to INA § 235(b)(1)(a), (b) is well established law.  *See Matter of M S* , 27 I&N Dec. 509 (A.G. 2019); *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).  The Court reviewed INA § 235 and in the context of the broader statute, the statutory text clearly establishes that for a respondent to be an applicant for admission one must be seeking inspection and authorization by an immigration officer.

The Court has also reviewed *Matter of   . LI*, 29 I&N Dec. 66 (BIA 2025).  The Court's decision in this respondent's case is not inconsistent with the Board's decision in *Matter of   . LI*. In   *. LI*, the applicant for admission was initially present in the United States without permission. She was intercepted by immigration officials within fourteen days of entry and a hundred miles of the border, and within two years of her entry and was statutorily subject to mandatory detention. At the time of her arrest, she made the immigration officers aware that she was seeking admission to the United States.  However, DHS, for policy-based reasons, chose to release her on parole. DHS subsequently revoked that applicant's parole, and she was reverted to her prior immigration status—as an applicant seeking admission to the United States.  A subsequent warrant for her arrest was issued under to INA § 236; however, at no point was she admitted—she was still seeking admission.

Illegal aliens who have circumvented authorities and are found in the United States years after their entry never intended to apply for admission.  They are already present in the United States, making them subject to INA § 236.  Having reviewed the record, *Matter of   . LI*, statutory and regulatory binding precedent, as well as binding case law, the Court found that the respondent was subject to custody under section 236(a) of the INA, and therefore, the Court had jurisdiction to consider his request for custody redetermination.

The respondent has the burden of proof in a custody redetermination hearing under section 236(a) of the INA to establish to the satisfaction of the Immigration Judge that he or she does not pose a danger to persons or property and does not pose a risk of flight. *See Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006).

Here, the Court found the respondent demonstrated he does not pose a danger to persons or property and does not pose a risk of flight. *Id.* The Court considered that the respondent unlawfully entered the United States on two occasions and was voluntarily returned to Mexico each time. The record demonstrates however that following his most recent entry in 2010, the respondent has lived in the United States continuously for over fourteen years. He has maintained employment since 2011 and has filed taxes. The respondent has been married to a Lawful Permanent Resident since March 8, 2022, and is the caregiver to his United States citizen three-year old granddaughter. Based on the foregoing, the Court set bond at $10,000.

Dated: September 25, 2025

*Lena Golovnin*

Hon. Lena Golovnin
United States Immigration Judge

RE:  LUNA DELGADO, HUMBERTO

File:  A226-165-933

---

CERTIFICATE OF SERVICE

THIS DOCUMENT WAS SERVED BY:  MAIL [M]  PERSONAL SERVICE [P]  ELECTRONIC SERVICE [E]
TO: [ ] ALIEN  [P] ALIEN c/o Custodial Officer  [E] ALIEN's ATT/REP  [E] DHS
DATE:  9/25/2025        BY:  COURT STAFF E.LANG
     Attachments:  [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other

---

C1

**U.S. Department of Justice**
Executive Office for Immigration Review

**Notice of ICE Intent to Appeal Custody Redetermination**

Date: 8/28/25

Alien Number: 226-165-933

Alien Name: Luna Delgado Humberto

1. Immigration and Customs Enforcement (ICE) has:

  ☒ a. Held the respondent without bond.

  ❑ b. Set the respondent's bond at $ _____ .

2. The Immigration Judge on 8/28/25
   _____
   (Date)

  ❑ a. Authorized the respondent's release.

  ☒ b. Redetermined the ICE bond to $ 10,000 .

3. Filing this form on 8/28/25
   _____ automatically stays the
   (Date)

   Immigration Judge's custody redetermination decision. See 8 C.F.R. §1003.19(i)(2).

4. The stay shall lapse if ICE does not file a notice of appeal along with appropriate certification within ten business days of the issuance of the order of the Immigration Judge, or upon ICE's withdrawal of this notice, or as set forth in 8 C.F.R. §1003.6(c)(4) and (5).
   See 8 C.F.R. §1003.6(c)(1).

*Nicholas C. Bussi*
ICE Counsel

I, Nicholas C. Bussi, Assistant Chief Counsel, served the Notice of ICE Intent to Appeal Custody Redetermination on
   (Name)

Jennifer Vargas, Esq., via Electronic Courts and Appeals System (ECAS) , on 8/28/25 .
   (Respondent or Respondent's Representative)                              (Date)

*Nicholas C. Bussi*
Signature

Form EOIR-43
Rev. Oct. 2006

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB# 1125-0002

**Notice of Appeal from a Decision of an Immigration Judge**

*Staple Check or Money Order Here. Include Name(s) and "A" Number(s) on the face of the check or money order.*

1. List Name(s) and "A" Number(s) of all Respondent(s)/Applicant(s):

   Humberto Luna Delgado, A#226-165-933

   For Official Use Only

   **!** **WARNING:** Names and "A" Numbers of **everyone** appealing the Immigration Judge's decision must be written in item #1. The names and "A" numbers listed will be the only ones considered to be the subjects of the appeal.

2. I am ☐ the Respondent/Applicant  ☑ DHS-ICE *(Mark only one box.)*

3. I am ☑ DETAINED  ☐ NOT DETAINED *(Mark only one box.)*

4. My last hearing was at **Batavia Immigration Court, Batavia, NY** *(Location, City, State)*

5. **What decision are you appealing?**

   *Mark only one box below. If you want to appeal more than one decision, you must use more than one Notice of Appeal (Form EOIR-26).*

   ☐ I am filing an appeal from the Immigration Judge's decision *in **merits** proceedings* (example: removal, deportation, exclusion, asylum, etc.) dated_____.

   ☑ I am filing an appeal from the Immigration Judge's decision *in **bond** proceedings* dated
   _____8/28/25_____ . (For DHS use only: Did DHS invoke the automatic stay provision before the Immigration Court? ☑ Yes. ☐ No.)

   ☐ I am filing an appeal from the Immigration Judge's decision ***denying a motion to reopen or a motion to reconsider*** dated_____.

   *(Please attach a copy of the Immigration Judge's decision that you are appealing.)*

EOIR – 1 of 3

**Page 1 of 3**

Form EOIR-26
Rev. Nov. 2022
Exp. Jan. 2026

**6.** State in detail the reason(s) for this appeal. Please refer to the General Instructions at item F for further guidance. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.

This appeal is controlled by *Matter of Yajure Hurtado,* 29 I&N 216 (BIA 2025), as set forth in the attached NOA supplement.

*(Attach additional sheets if necessary)*

**!** **WARNING:** You must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing.

**7.** Do you desire oral argument before the Board of Immigration Appeals? ☐ Yes ☑ No

**8.** Do you intend to file a separate written brief or statement after filing this Notice of Appeal? ☐ Yes ☑ No

**9.** If you are unrepresented, do you give consent to the BIA Pro Bono Project to have your case screened by the Project for potential placement with a free attorney or accredited representative, which may include sharing a summary of your case with potential attorneys and accredited representatives? *(There is no guarantee that your case will be accepted for placement or that an attorney or accredited representative will accept your case for representation)* ☐ Yes ☐ No

**!** **WARNING:** If you mark "Yes" in item #7, you should also include in your statement above why you believe your case warrants review by a three-member panel. The Board ordinarily will not grant a request for oral argument unless you also file a brief.

If you mark "Yes" in item #8, you will be expected to file a written brief or statement after you receive a briefing schedule from the Board. The Board may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule.

**10.** **Print Name:** Nicholas C. Bussi

**11.** **Sign Here:** ▶ **X** NICHOLAS C BUSSI Digitally signed by NICHOLAS C BUSSI Date: 2025.09.12 08:54:53 -04'00'

Signature of Person Appealing
*(or attorney or representative)*

Date

**12.**

Mailing Address of Respondent(s)/Applicant(s)

Humberto Luna Delgado

(Name)

4250 Federal Dr.

(Street Address)

_____

(Apartment or Room Number)

Batavia, NY 14020

(City, State, Zip Code)

_____

(Telephone Number)

**11.**

Mailing Address of Attorney or Representative for the Respondent(s)/Applicant(s)

Jennifer Villarroel Vargas

(Name)

PO Box 92281

(Street Address)

_____

(Suite or Room Number)

Washington, DC 20090

(City, State, Zip Code)

_____

(Telephone Number)

**NOTE:** You must notify the Board within five (5) working days if you move to a new address or change your telephone number. You must use the Change of Address Form/Board of Immigration Appeals (Form EOIR-33/BIA).

**NOTE:** If an attorney or representative signs this appeal for you, he or she must file *with this appeal*, a Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals (Form EOIR-27).

**13.**

### PROOF OF SERVICE (You Must Complete This)

I _____ mailed or delivered a copy of this Notice of Appeal

(Name)

on _____ to _____

(Date)                              (Opposing Party)

at _____

(Number and Street, City, State, Zip Code)

[✓] No service needed. I electronically filed this document, and the opposing party is participating in ECAS.

| SIGN HERE → | X NICHOLAS C BUSSI | Digitally signed by NICHOLAS C BUSSI Date: 2025.09.12 08:55:22 -04'00' |
|---|---|---|
| | Signature | |

**NOTE:** If you are the Respondent or Applicant, the "Opposing Party" is the Assistant Chief Counsel of DHS - ICE.

**WARNING:** If you do not complete this section properly, your appeal will be rejected or dismissed.

**WARNING:** If you do not attach the **fee payment receipt,** fee, or a completed Fee Waiver Request (Form EOIR-26A) to this appeal, your appeal may be rejected or dismissed.

### HAVE YOU?

[✓] Read all of the General Instructions.
[✓] Provided all of the requested information.
[✓] Completed this form in English.
[ ] Provided a certified English translation for all non-English attachments.
[✓] Signed the form.

[ ] Served a copy of this form and all attachments on the opposing party, **if applicable.**
[✓] Completed and signed the Proof of Service
[ ] Attached the required **fee payment receipt,** fee, or Fee Waiver Request.
[ ] If represented by attorney or representative, attach a completed and signed EOIR-27 **for each** respondent or applicant.

EOIR – 3 of 3

Form EOIR-26
Rev. Nov. 2022
Exp. Jan. 2026

Humberto Luna Delgado
*A# 226165933*

### EOIR-43 Senior Legal Official Certification

I certify that I have approved the filing of the notice of appeal in this case according to review procedures established by U.S. Immigration and Customs Enforcement, Department of Homeland Security.

I further certify that I am satisfied that the evidentiary record supports the contentions justifying the continued detention of the alien and the legal arguments are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing precedent or the establishment of new precedent.

September 12, 2025

Date

JEFFREY T FIUT

Digitally signed by
JEFFREY T FIUT
Date: 2025.09.12 09:24:41
-04'00'

Jeffrey T. Fiut
Acting Chief Counsel
U.S. Immigration and Customs Enforcement

Humberto Luna Delgado
A 226 165 933

## ATTACHMENT TO FORM EOIR-26 AND MEMORANDUM OF LAW

The Immigration Judge erred in ordering the respondent released from the custody of the

Department of Homeland Security (DHS) pursuant to section 236(a) of the Immigration and

Nationality Act (INA). Section 235 of the INA is the applicable immigration detention authority

for all applicants for admission. Section 236 of the INA is the applicable detention authority for

aliens who are already present in the United States after an admission and are deportable. *Id.*

§§ 236, 237(a). Indeed, the Board of Immigration Appeals recently held that "Immigration

Judges lack authority to hear bond requests or to grant bond to aliens . . . who are present in the

United States without admission." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 (BIA

2025).[1] The respondent, who is present in the United States without admission or parole

(PWAP), is an applicant for admission in INA § 240 removal proceedings and is therefore

detained pursuant to INA § 235(b)(2)(A). DHS requests that the Board of Immigration Appeals

(Board) reverse the decision of the Immigration Judge in a precedent decision, as this case

presents an issue that "arise[s] frequently in immigration cases," and given the "need to achieve,

maintain, or restore national uniformity of interpretation of issues under the immigration laws or

regulations." 8 C.F.R. § 1003.1(g)(3)(ii), (v).[2]

---

[1] DHS notes that the Immigration Judge's decision predates the publication of *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 (BIA 2025).

[2] This case presents substantive issues that would benefit from clarification from the Board in a precedential decision. Notably, the Executive Office for Immigration Review (EOIR) recently issued a policy memorandum acknowledging that "when conflicting Board precedents exist, Immigration Judges are uncertain as to which line of precedent they are obligated to follow." EOIR PM 25-34, *Conflicting Precedents of the Board of Immigration Appeals* § I, at 2 (July 3, 2025). That EOIR recognizes there are situations in which multiple lines of precedent may be in tension or conflict with one another underscores the need for Board precedent on this issue.

A 226 165 933

## ISSUES PRESENTED

1. The Immigration Judge erred in ordering the respondent released from DHS custody pursuant to INA § 236(a), where the respondent is an applicant for admission and is thus subject to detention pursuant to INA § 235(b)(2)(A) and ineligible for release but for a release on parole by DHS pursuant to INA § 212(d)(5).

2. The Immigration Judge erred in finding that the respondent met his burden to establish he does not pose a risk of flight.

## STANDARD OF REVIEW

The Board reviews questions of fact for clear error, 8 C.F.R. § 1003.1(d)(3)(i), and "questions of law, discretion, and judgment and all other issues in appeals from decisions of [I]mmigration [J]udges de novo," *id.* § 1003.1(d)(3)(ii). The statutory authority governing an alien PWAP's detention and whether such an alien is eligible for a custody redetermination hearing before an Immigration Judge is a question of law reviewed *de novo. See id.* Whether the respondent is a risk of flight is a question of judgment that is reviewed *de novo*; however, the factual findings underlying that determination is reviewed for clear error. *Matter of Beltrand-Rodriguez*, 29 I&N Dec. 76, 77 (BIA 2025).

## SUMMARY OF THE ARGUMENT

Section 235 of the INA is the applicable detention authority for all applicants for admission; specifically, INA § 235(b)(2)(A) provides the detention authority for aliens PWAP[3]

---

[3] The respondent in this case has not been granted parole. Nonetheless, it bears emphasis that as explained in Argument I.C. below, an alien granted parole remains an applicant for admission and therefore subject to detention under INA § 235. INA § 212(d)(5)(A) (permitting parole only for aliens "applying for admission" and requiring that the alien "continue to be dealt with in the same manner as that of any other applicant for admission to the United States" following parole); *see* 8 C.F.R. §§ 1.2 (providing that "[a]n arriving alien remains an arriving alien even if paroled pursuant to [INA §] 212(d)(5)"), 1001.1(q) (same). The Supreme Court and the Board have long recognized that aliens paroled into the United States are legally in the position of aliens standing at the border, regardless of the duration of their parole. *See Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958); *Matter of Abebe*, 16 I&N Dec. 171, 173 (BIA 1976) (citing, *inter alia, Leng May Ma*, 357 U.S. at 185; *Kaplan v. Tod*, 267 U.S. 228 (1925)); *Matter of L-Y-Y-*, 9 I&N Dec. 70 (BIA; A.G. 1960); *see also, e.g., Duarte v. Mayorkas*, 27 F.4th 1044, 1059-60 (5th Cir. 2022); *Ibragimov v. Gonzales*, 476 F.3d 125, 134 (2d Cir. 2007). Accordingly, although this brief refers as

A 226 165 933

placed in INA § 240 removal proceedings given such aliens are both applicants for admission under INA § 235(a)(1) and aliens seeking admission under INA § 235(b)(2)(A). *Yajure Hurtado*, 29 I&N Dec. at 225. Section 236 of the INA is the applicable detention authority for those aliens who have been admitted and are deportable. The respondent, who is an alien PWAP, is properly detained pursuant to INA § 235(b)(2)(A) such that the Immigration Judge lacked authority to redetermine the respondent's custody. However, assuming, arguendo, that the Immigration Judge had authority to redetermine the respondent's custody, the Immigration Judge improperly concluded that the respondent is not a flight risk.

## STATEMENT OF THE CASE

The respondent is a forty-nine-year-old native and citizen of Mexico. *See* Form I-213. On July 9, 2025, immigration officers encountered the respondent in Niagara Falls, New York and took the respondent into custody. The respondent was issued a Notice to Appear alleging that he is present in the United States in violation of INA §§ 212(a)(6)(A)(i). On August 28, 2025, the Immigration Judge conducted a bond hearing. DHS argued that the Immigration Judge lacked jurisdiction to redetermine bond because the respondent is an applicant for admission and his detention is governed by INA § 235(b)(2)(A). The Immigration Judge rejected this argument, found the respondent eligible for bond, and set bond in the amount of $10,000. DHS thereafter timely filed an automatic stay (Form EOIR-43) and notice of appeal.

---

shorthand to aliens PWAP, aliens who are present without admission but have been paroled likewise remain applicants for admission subject to detention under INA § 235.

A 226 165 933

**ARGUMENT**

I.     APPLICANTS FOR ADMISSION ARE SUBJECT TO DETENTION UNDER INA § 235 AND ARE INELIGIBLE FOR RELEASE BY AN IMMIGRATION JUDGE

The Immigration Judge erred in ordering the respondent released pursuant to INA § 236(a), where the respondent is an applicant for admission in INA § 240 removal proceedings and is thus subject to detention under INA § 235(b)(2)(A). Section 235 of the INA is the applicable detention authority for all applicants for admission—both arriving aliens and PWAPs alike—regardless of whether the alien was initially processed for expedited removal proceedings under INA § 235 or placed directly into removal proceedings under INA § 240.

"As with any question of statutory interpretation, [the] analysis begins with the plain language of the statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) (citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004)). Section 235 of the INA defines an "applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) . . . ." INA § 235(a)(1); *see Matter of Velasquez-Cruz*, 26 I&N Dec. 458, 463 n.5 (BIA 2014) ("[R]egardless of whether an alien who illegally enters the United States is caught at the border or inside the country, he or she will still be required to prove eligibility for admission."). Accordingly, by its very definition, the term "applicant for admission" includes two categories of aliens: (1) arriving aliens and (2) aliens PWAP. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (explaining that "an alien who tries to enter the country illegally is treated as an 'applicant for admission'" (citing INA § 235(a)(1)); *Matter of Lemus*, 25 I&N Dec. 734, 743 (BIA 2012) ("Congress has defined the concept of an 'applicant for admission' in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission . . . ."); *Matter of E-R-M- & L-R-*

A 226 165 933

*M-*, 25 I&N Dec. 520, 523 (BIA 2011) (stating that "the broad category of applicants for admission . . . includes, *inter alia*, any alien present in the United States who has not been admitted" (citing INA § 235(a)(1))). An arriving alien is defined, in pertinent part, as "an applicant for admission coming or attempting to come into the United States at a [POE] . . . ." 8 C.F.R. §§ 1.2, 1001.1(q). Section 212(a) of the INA describes certain classes of aliens who are inadmissible, including aliens "present in the United States without being admitted or paroled[.]" INA § 212(a)(6)(A)(i).

All aliens who are applicants for admission "shall be inspected by immigration officers." *Id.* § 235(a)(3); *see also* 8 C.F.R. § 235.1(a) ("Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. [POE] when the port is open for inspection . . . ."). An applicant for admission seeking admission at a United States POE "must present whatever documents are required and must establish to the satisfaction of the inspecting officer that the alien is not subject to removal . . . and is entitled, under all of the applicable provisions of the immigration laws . . . to enter the United States." 8 C.F.R. § 235.1(f)(1); *see* INA § 240(c)(2)(A) (describing the related burden of an applicant for admission in removal proceedings). "An alien present in the United States who has not been admitted or paroled or an alien who seeks entry at other than an open, designated [POE] . . . is subject to the provisions of [INA § 212(a)] and to removal under [INA §] 235(b) or [INA §] 240." 8 C.F.R. § 235.1(f)(2).

Here, the respondent did not present himself at a POE but instead entered the United States between POEs and without having been admitted or paroled after inspection by an immigration officer. The respondent is therefore an alien PWAP and, consequently, an applicant for admission.

A 226 165 933

Both arriving aliens and aliens PWAP, as applicants for admission, may be removed from the United States by, *inter alia*, expedited removal under INA § 235(b)(1)[4] or removal proceedings before an Immigration Judge under INA § 240. INA §§ 235(b)(1), (b)(2)(A), 240; *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (describing how "applicants for admission fall into one of two categories, those covered by [INA § 235(b)(1)] and those covered by [INA § 235(b)(2)]"). Immigration officers have discretion to apply expedited removal under INA § 235 or to initiate removal proceedings before an Immigration Judge under INA § 240. *E-R-M- & L-R-M-*, 25 I&N Dec. at 524; *see also Matter of Q. Li*, 29 I&N Dec. 66, 68 (BIA 2025) ("DHS may place aliens arriving in the United States in either expedited removal proceedings under section 235(b)(1) of the INA, or full removal proceedings under section 240 of the INA" (citations omitted))

### A. Immigration Judges Do Not Have Authority to Redetermine the Custody Status of Applicants for Admission in Expedited Removal Proceedings Given They Are Detained Pursuant to INA § 235(b)(1).

Applicants for admission whom DHS places into expedited removal under INA § 235 are subject to detention under INA § 235(b)(1); such aliens (including those referred for INA § 240 removal proceedings after establishing a credible fear of persecution or torture) are ineligible for a bond hearing before an Immigration Judge. INA § 235(b)(1/)(B)(ii) (providing for detention of any alien who is found to have established a credible fear of persecution in expedited removal

---

[4] Section 235(b)(1) of the INA authorizes immigration officers to order certain inadmissible aliens "removed from the United States without further hearing or review" if the immigration officer finds that the alien, "who is arriving in the United States or is described in [INA § 235(b)(1)(A)(iii)] is inadmissible under section 212(a)(6)(C) or 212(a)(7)." INA § 235(b)(1)(A)(i); *see* 8 C.F.R. § 235.3(b)(2)(i). If DHS wishes to pursue inadmissibility charges other than INA § 212(a)(6)(C) or (a)(7), DHS must place the alien in removal proceedings under INA § 240. 8 C.F.R. § 235.3(b)(3). Additionally, an alien PWAP "who establishes that he or she has been continuously physically present in the United States for the 2–year period immediately prior to the date of determination of inadmissibility shall be detained in accordance with [INA § 235(b)(2)] for a proceeding under [INA § 240]." *Id.* § 235.3(b)(1)(ii); *id.* § 1235.6(a)(1)(i) (providing that an immigration officer will issue and serve an NTA to an alien "[i]f, in accordance with the provisions of [INA § 235(b)(2)(A)], the examining immigration officer detains an alien for a proceeding before an immigration judge under [INA § 240]").

A 226 165 933

proceedings for further consideration of their asylum application), (iii)(IV) ("Any alien subject to

the procedures under [INA § 235(b)(1)(B)] shall be detained pending a final determination of

credible fear of persecution and, if found not to have such a fear, until removed."); *see also* 8

C.F.R. § 235.3(b)(2)(iii) ("An alien whose inadmissibility is being considered under this section

or who has been ordered removed pursuant to this section shall be detained pending

determination and removal."), (b)(4)(ii) ("Pending the credible fear determination by an asylum

officer and any review of that determination by an [I]mmigration [J]udge, the alien shall be

detained."); *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019) (holding that aliens PWAP placed in

expedited removal and later transferred to INA § 240 removal proceedings after establishing a

credible fear of persecution or torture are subject to detention under INA § 235(b)(1) and are

ineligible for release under INA § 236).

The respondent, an applicant for admission, has never been subject to expedited removal

proceedings and is therefore not subject to detention under INA § 235(b)(1). However, the

respondent is an alien PWAP in INA § 240 removal proceedings and is therefore subject to

detention under INA § 235(b)(2)(A).

> **B. Immigration Judges Do Not Have Authority to Redetermine the Custody Status of Applicants for Admission in INA § 240 Removal Proceedings Given They Are Detained Pursuant to INA § 235(b)(2)(A).**

Applicants for admission whom DHS places in removal proceedings before an

Immigration Judge under INA § 240 are similarly subject to detention and ineligible for a

custody redetermination hearing before an Immigration Judge. Specifically, aliens PWAP placed

in INA § 240 removal proceedings are both applicants for admission as defined in INA

§ 235(a)(1) *and* aliens "seeking admission," as contemplated in INA § 235(b)(2)(A). Such aliens

are subject to detention under INA § 235(b)(2)(A) and thus ineligible for a bond redetermination

hearing before the Immigration Judge.

A 226 165 933

      i.     Aliens PWAP whom DHS places in INA § 240 removal proceedings are subject to detention under INA § 235(b)(2)(A) and ineligible for a bond hearing before an Immigration Judge.

Section 235(b)(2)(A) of the INA "serves as a catchall provision that applies to all applicants for admission not covered by [INA § 235(b)(1)]." *Jennings*, 583 U.S. at 287; *see* INA § 235(b)(2)(A), (B). Under INA § 235(b)(2)(A), "an alien who is an applicant for admission" "*shall be detained* for a proceeding under [INA §] 240" "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted." INA § 235(b)(2)(A) (emphasis added); 8 C.F.R. § 235.3(b)(3) (providing that an alien placed into INA § 240 removal proceedings in lieu of expedited removal proceedings under INA § 235 "shall be detained" pursuant to INA § 235(b)(2)); 8 C.F.R. § 235.3(c) (providing that "any arriving alien . . . placed in removal proceedings pursuant to section 240 of the [INA] shall be detained in accordance with section 235(b) of the [INA]" unless paroled pursuant to INA § 212(d)(5)).

Thus, according to the plain language of INA § 235(b)(2)(A), applicants for admission in INA § 240 removal proceedings "*shall* be detained." INA § 235(b)(2)(A) (emphasis added). "The 'strong presumption' that the plain language of the statute expresses congressional intent is rebutted only in 'rare and exceptional circumstances,' . . . ." *Ardestani v. INS*, 502 U.S. 129, 135–36 (1991) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)); *see Lamie*, 540 U.S. at 534 ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (quotation marks omitted)). As the Supreme Court observed in *Jennings*, nothing in INA § 235(b)(2)(A) "says anything whatsoever about bond hearings." 583 U.S. at 297. Further, there is no textual basis for arguing that INA § 235(b)(2)(A) applies only to arriving aliens. The distinction the Attorney General drew in the 1997 Interim Rule (addressed in

A 226 165 933

detail below) between "arriving aliens," *see* 8 C.F.R. §§ 1.2, 1001.1(q), and "aliens who are present without being admitted or paroled," Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997),[5] finds no purchase in the statutory text. No provision within INA § 235(b)(2) refers to "arriving aliens," or limits that paragraph to arriving aliens, as Congress intended for it to apply generally "in the case of an alien who is an applicant for admission." INA § 235(b)(2)(A). Where Congress means for a rule to apply only to "arriving aliens," it uses that specific term of art or similar phrasing. *See, e.g.*, *id.* §§ 212(a)(9)(A)(i), 235(c)(1).

Until recently, DHS and the Department of Justice (DOJ) interpreted INA § 236(a) to be an available detention authority for aliens PWAP placed directly in INA § 240 removal proceedings. *See, e.g.*, *Matter of Cabrera-Fernandez*, 28 I&N Dec. 747, 747 (BIA 2023); *Matter of R-A-V-P-*, 27 I&N Dec. 803, 803 (BIA 2020); *Matter of Garcia-Garcia*, 25 I&N Dec. 93, 94 (BIA 2009); *Matter of D-J-*, 23 I&N Dec. 572 (A.G. 2003). However, legal developments have made clear that INA § 235 is the sole applicable immigration detention authority for *all* applicants for admission. In *Jennings*, the Supreme Court explained that INA § 235(b) applies to all applicants for admission, noting that the language of INA § 235(b)(2) is "quite clear" and "unequivocally mandate[s]" detention. 583 U.S. at 300, 303 (explaining that "the word 'shall' usually connotes a requirement" (quoting *Kingdomware Technologies, Inc. v. United States*, 579

---

[5] As discussed more below, the preamble language of the 1997 Interim Rule states that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. at 10,323. However, preambular language is not binding and "should not be considered unless the regulation itself is ambiguous." *El Comite Para El Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062, 1070 (9th Cir. 2008); *see also Wards Cove Packing Corp. v. Nat'l Marine Fisheries Serv.*, 307 F.3d 1214, 1219 (9th Cir.2002) ("[T]he plain meaning of a regulation governs and deference to an agency's interpretation of its regulation is warranted only when the regulation's language is ambiguous." (citing *Christensen v. Harris County*, 529 U.S. 576, 588 (2000))).

A 226 165 933

U.S. 162, 171 (2016))). Similarly, the Attorney General, in *Matter of M-S-*, unequivocally recognized that INA § 235 and INA § 236(a) do not overlap but describe "different classes of aliens." 27 I&N Dec. at 516. The Attorney General also held—in an analogous context—that aliens PWAP placed into expedited removal proceedings are detained under INA § 235 even if later placed in INA § 240 removal proceedings. 27 I&N Dec. at 518-19. In *Matter of Q. Li*, the Board held that an alien who illegally crossed into the United States between POEs and was apprehended without a warrant while arriving is detained under INA § 235(b). 29 I&N Dec. at 71. This ongoing evolution of the law makes clear that all applicants for admission are subject to detention under INA § 235(b). *Cf. Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021) (providing that "no amount of policy-talk can overcome a plain statutory command"); *see generally Florida v. United States*, 660 F. Supp. 3d 1239, 1275 (N.D. Fla. 2023) (explaining that "the 1996 expansion of [INA § 235(b)] to include illegal border crossers would make little sense if DHS retained discretion to apply [INA § 236(a)] and release illegal border crossers whenever the agency saw fit").[6] *Florida's* conclusion "that [INA § 235(b)]'s 'shall be detained' means what it says and . . . is a mandatory requirement . . . flows directly from *Jennings*." *Florida*, 660 F. Supp. 3d at 1273.

Given INA § 235 is the applicable detention authority for all applicants for admission—both arriving aliens and aliens PWAP alike, regardless of whether the alien was initially processed for expedited removal proceedings under INA § 235 or placed directly into removal proceedings under INA § 240—and "[b]oth [INA § 235(b)(1) and (b)(2)] mandate detention"

---

[6] Though not binding on the Board, *see Matter of Duarte-Gonzalez*, 28 I&N Dec. 688, 690 n.2 (BIA 2023); *Matter of K-S-*, 20 I&N Dec. 715, 718-19 (BIA 1993), the U.S. District Court for the Northern District of Florida's decision is instructive here. *Florida* held that INA § 235(b) mandates detention of applicants for admission throughout removal proceedings, rejecting the assertion that DHS has discretion to choose to detain an applicant for admission under INA §§ 235(b) or 236(a). 660 F. Supp. 3d at 1275. The court held that such discretion "would render mandatory detention under [INA § 235(b)] meaningless." *Id.*

A 226 165 933

"throughout the completion of applicable proceedings," *Jennings*, 583 U.S. at 301–03,

Immigration Judges do not have authority to redetermine the custody status of an alien PWAP.

Here, the respondent is an applicant for admission (specifically, an alien PWAP), placed

directly into removal proceedings under INA § 240. He is therefore subject to detention pursuant

to INA § 235(b)(2)(A) and ineligible for a custody redetermination hearing before an

Immigration Judge. "It is well established . . . that the Immigration Judges only have the

authority to consider matters that are delegated to them by the Attorney General and the [INA]."

*Matter of A-W-*, 25 I&N Dec. 45, 46 (BIA 2009). "In the context of custody proceedings, an

Immigration Judge's authority to redetermine conditions of custody is set forth in 8 C.F.R.

§ 1236.1(d) . . . ." *Id*. at 46. The regulation clearly states that "the [I]mmigration [J]udge is

authorized to exercise the authority in section 236 of the [INA]." 8 C.F.R. § 1236.1(d); *see id.*

§ 1003.19(a) (authorizing Immigration Judges to review "[c]ustody and bond determinations

made by [DHS] pursuant to 8 C.F.R. part 1236"); *see id.* § 1003.19(h)(2)(i)(B) ("[A]n

[I]mmigration [J]udge may not redetermine conditions of custody imposed by [DHS] with

respect to . . . [a]rriving aliens in removal proceedings, including aliens paroled after arrival

pursuant to [INA §] 212(d)(5)[.]"). "An Immigration Judge is without authority to disregard the

regulations, which have the force and effect of law." *Matter of L-M-P-*, 27 I&N Dec. 265, 267

(BIA 2018). Thus, the Immigration Judge erred in ordering the respondent released from custody

pursuant to INA § 236(a) given he is an applicant for admission and is therefore subject to

detention under INA § 235(b)(2)(A).

      ii.    Aliens PWAP in INA § 240 removal proceedings are both applicants for
          admission under INA § 235(a)(1) and aliens seeking admission under INA
          § 235(b)(2)(A).

As discussed above, aliens PWAP placed in removal proceedings under INA § 240 are applicants for admission as defined in INA § 235(a)(1), subject to detention under INA § 235(b)(2)(A), and thus ineligible for a bond redetermination hearing before the Immigration Judge. Such aliens are also considered "seeking admission," as contemplated in INA § 235(b)(2)(A). To be sure, "many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws." *Lemus*, 25 I&N Dec. at 743; *see Q. Li*, 29 I&N Dec. at 68 n.3; *see also Matter of Valenzuela-Felix*, 26 I&N Dec. 53, 56 (BIA 2012) (explaining that "an application for admission [i]s a continuing one").

In analyzing INA § 235(b)(2)(A), the Supreme Court in *Jennings* equated "applicants for admission" with aliens "seeking admission." *See Jennings*, 583 U.S. at 289. As noted above, the Supreme Court stated that INA § 235(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by [INA § 235(b)(1)]." *Id.* at 287. In doing so, it specifically cited INA § 235(b)(2)(A)—and thus did not appear to consider aliens "seeking admission" to be a subcategory of applicants for admission. *Id.* The Supreme Court also stated that "[a]liens who are instead covered by [INA § 235(b)(2)] are detained pursuant to a different process . . . [and] 'shall be detained for a [removal] proceeding' . . . ." *Id.* at 288 (quoting INA § 235(b)(2)(A)). The Supreme Court considered all aliens covered by INA § 235(b)(2) to be subject to detention under subparagraph (A)—not just a subset of such aliens. Moreover, *Jennings* found that INA § 235(b) "applies primarily to aliens *seeking entry* into the United States (*'applicants for admission' in the language of the statute*)." *Id.* at 297 (emphases added). The Court therefore considered aliens seeking admission/entry and applicants for admission to be

A 226 165 933

virtually indistinguishable; it did not consider them to be merely a subcategory of applicants for admission.

Indeed, the Supreme Court explicitly stated that aliens seeking admission are subject to INA § 235(b) detention: "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under [INA §§ 235(b)(1) and (b)(2)]." *Id.* at 289. This was recently reiterated by the Board in *Matter of Q. Li*, which held that for aliens "seeking admission into the United States who are placed directly in full removal proceedings, [INA §] 235(b)(2)(A) . . . mandates detention 'until removal proceedings have concluded.'" 29 I&N Dec. at 68 (quoting *Jennings*, 583 U.S. at 299).

The structure of the statutory scheme prior to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). Pub. L. No. 104-208, div. C, 110 Stat. 3009-546 (1996) bolsters the understanding that under the current statutory scheme, all applicants for admission are subject to detention under INA § 235(b). The broad definition of applicants for admission was added to the INA in 1996. Before 1996, the INA only contemplated inspection of aliens arriving at POEs. *See* INA § 235(a) (1995) (discussing "aliens arriving at ports of the United States"); *id.* § 235(b) (1995) (discussing "the examining immigration officer at the port of arrival"). Relatedly, any alien who was "in the United States" and within certain listed classes of deportable aliens was deportable. *Id.* § 241(a) (1995). One such class of deportable aliens included those "who entered the United States without inspection or at any time or place other than as designated by the Attorney General." *Id.* § 241(a)(1)(B) (1995) (former deportation ground relating to entry without inspection). Aliens were excludable if they were "seeking admission" at a POE or had been paroled into the United States. *See id.* §§ 212(a), 235(a) (1995). Deportation proceedings (conducted pursuant to former INA § 242(b) (1995)) and exclusion

A 226 165 933

proceedings (conducted pursuant to former INA § 236(a) (1995)) differed and began with

different charging documents. *See Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 175 (1993)

(explaining the "important distinction" between deportation and exclusion); *Matter of Casillas*,

22 I&N Dec. 154, 156 n.2 (BIA 1998) (noting the various forms commencing deportation,

exclusion, or removal proceedings). The placement of an alien in exclusion or deportation

proceedings depended on whether the alien had made an "entry" within the meaning of the INA.

*See* INA § 101(a)(13) (1995) (defining "entry" as "any coming of an alien into the United States,

from a foreign port or place or from an outlying possession"); *see also Rosenberg v. Fleuti*, 374

U.S. 449, 462 (1963) (concluding that whether a lawful permanent resident has made an "entry"

into the United States depends on whether, pursuant to the statutory definition, he or she has

intended to make a "meaningfully interruptive" departure).

Former INA § 235 provided that aliens "seeking admission" at a POE who could not

demonstrate entitlement to be admitted ("excludable" aliens) were subject to mandatory

detention, with potential release solely by means of parole under INA § 212(d)(5) (1995). INA

§ 235(a)-(b) (1995). "Seeking admission" in former INA § 235 appears to have been understood

to refer to aliens arriving at a POE.[7] *See id.* The INS regulations implementing former INA

§ 235(b) provided that such arriving aliens had to be detained without parole if they had "no

---

[7] Given Congress's overhaul of the INA, including wholesale revision of the definition of which aliens are considered applying for or seeking admission, Congress clearly did not intend for the former understanding of "seeking admission" to be retained in the new removal scheme. Generally, "[w]hen administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates . . . the intent to incorporate its administrative and judicial interpretations as well." *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998). However, the prior construction canon of statutory interpretation "is of little assistance here because, . . . this is not a case in which 'Congress re-enact[ed] a statute without change.'" *Public Citizen Inc. v. U.S. Dep't of Health and Human Servs.*, 332 F.3d 654, 668 (D.C. Cir. 2003) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 382 n.66 (1982)). Rather, the presumption "of congressional ratification" of a prior statutory interpretation "applies only when Congress reenacts a statute without relevant change." *Holder v. Martinez Gutierrez*, 566 U.S. 583, 593 (2012) (citing *Jama v. Immigration and Customs Enforcement,* 543 U.S. 335, 349 (2005)).

A 226 165 933

documentation or false documentation," 8 C.F.R. § 235.3(b) (1995), but could be paroled if they

had valid documentation but were otherwise excludable, *id.* § 235.3(c) (1995). With regard to

aliens who entered without inspection and were deportable under former INA § 241, such aliens

were taken into custody under the authority of an arrest warrant, and like other deportable aliens,

could request bond. *See* INA §§ 241(a)(1)(B), 242(a)(1) (1995); 8 C.F.R. § 242.2(c)(1) (1995).

> As a result, "[aliens] who had entered without inspection could take advantage of
> the greater procedural and substantive rights afforded in deportation proceedings,"
> while [aliens] who actually presented themselves to authorities for inspection
> were restrained by "more summary exclusion proceedings." To remedy this
> unintended and undesirable consequence, the IIRIRA substituted "admission" for
> "entry," and replaced deportation and exclusion proceedings with the more
> general "removal" proceeding.

*Martinez v. Att'y Gen.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012) (citation omitted) (quoting *Hing*

*Sum v. Holder*, 602 F.3d 1092, 1100 (9th Cir. 2010)). Consistent with this dichotomy, the INA,

as amended by IIRIRA, defines *all* those who have not been admitted to the United States as

"applicants for admission." IIRIRA § 302.

Moreover, Congress's use of the present participle—seeking—in INA § 235(b)(2)(A)

should not be ignored. *United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a

verb tense is significant in construing statutes."). By using the present participle "seeking," INA

§ 235(b)(2)(A) "signal[s] present and continuing action." *Westchester Gen. Hosp., Inc. v.*

*Evanston Ins. Co.*, 48 F.4th 1298, 1307 (11th Cir. 2022). The phrase "seeking admission" "does

not include something in the past that has ended or something yet to come." *Shell v. Burlington*

*N. Santa Fe Ry. Co.*, 941 F.3d 331, 336 (7th Cir. 2019) (concluding that "having" is a present

participle, which is "used to form a progressive tense" that "means presently and continuously"

(citing Bryan A. Garner, *Garner's Modern American Usage* 1020 (4th ed. 2016))). The present

participle "expresses present action in relation to the time expressed by the finite verb in its

clause," *Present Participle*, Merriam-Webster, http://www.merriam-webster.com/dictionary/pres

ent%20participle (last visited September 5, 2025), with the finite verb in the same clause of INA

§ 235(b)(2)(A) being "determines." Thus, when pursuant to INA § 235(b)(2)(A) an "examining

immigration officer determines" that an alien "is not clearly and beyond a doubt entitled to be

admitted" the officer does so contemporaneously with the alien's present and ongoing action of

seeking admission. Interpreting the present participle "seeking" as denoting an ongoing process is

consistent with its ordinary usage. *See, e.g.*, *Samayoa v. Bondi*, No. 24-1432, 2025 WL 2104102, at

*2 (1st Cir. July 28, 2025) (alien inadmissible under INA § 212(a)(6)(A)(i) but "seeking to remain

in the country lawfully" applied for relief in removal proceedings); *Garcia v. USCIS*, No. 23-35267,

2025 WL 2046176, at *2 (9th Cir. July 22, 2025) ("USCIS requires all U visa holders seeking

permanent resident status under [INA § 245(m)] to undergo a medical examination . . .").

Accordingly, just as the respondent in *Samayoa* is not only an alien PWAP but also seeking to

remain in the United States, the respondent in this case is not only an alien PWAP, and therefore an

applicant for admission as defined in INA § 235(a)(1), *but also* an alien seeking admission under

INA § 235(b)(2)(A).

      Lastly, Congress's significant amendments to the immigration laws in IIRIRA supports

DHS's position that such aliens are properly detained pursuant to INA § 235(b)—specifically,

INA § 235(b)(2)(A). Congress, for example, eliminated certain anomalous provisions that

favored aliens who illegally entered without inspection over aliens arriving at POEs. A rule that

treated an alien who enters the country illegally, such as the respondent, more favorably than an

alien detained after arriving at a POE would "create a perverse incentive to enter at an unlawful

rather than a lawful location." *Gambino-Ruiz*, 91 F.4th at 990 (quoting *Thuraissigiam*, 591 U.S.

at 140) (rejecting such a rule as propounded by the defendant). Such a rule reflects "the precise

A 226 165 933

situation that Congress intended to do away with by enacting" IIRIRA. *Id.* "Congress intended to eliminate the anomaly 'under which illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a [POE]'" by enacting IIRIRA. *Ortega-Lopez v. Barr*, 978 F.3d 680, 682 (9th Cir. 2020) (quoting *Torres*, 976 F.3d at 928); *see also* H.R. Rep. No. 104-469, pt. 1, at 225–29 (1996).

During IIRIRA's legislative drafting process, Congress asserted the importance of controlling illegal immigration and securing the land borders of the United States. *See* H.R. Rep. 104-469, pt. 1, at 107 (noting a "crisis at the land border" allowing aliens to illegally enter the United States). As alluded to above, one goal of IIRIRA was to "reform the legal immigration system and facilitate legal entries into the United States . . . ." H.R. Rep. No. 104-828, at 1 (1996). Nevertheless, after the enactment of IIRIRA, the DOJ took the position—consistent with pre-IIRIRA law—that "despite being applicants for admission, aliens who are present without being admitted or paroled . . . will be eligible for bond and bond redetermination." 62 Fed. Reg. at 10,323. Affording aliens PWAP, who have evaded immigration authorities and illegally entered the United States bond hearings before an Immigration Judge, but not affording such hearings to arriving aliens, who are attempting to comply with U.S. immigration law, is anomalous with and runs counter to that goal. *Cf.* H.R. Rep. No. 104-469, pt. 1, at 225 (noting that IIRIRA replaced the concept of "entry" with "admission," as aliens who illegally enter the United States "gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a [POE]").

Accordingly, for the reasons discussed above, the respondent, as an alien PWAP in INA § 240 removal proceedings, is an applicant for admission and an alien seeking admission and is

A 226 165 933

therefore subject to detention under INA § 235(b)(2)(A) and ineligible for a bond redetermination hearing before an Immigration Judge.

### C. Applicants for Admission May Only Be Released from Detention On an INA § 212(d)(5) Parole.

Importantly, applicants for admission may only be released from detention if DHS invokes its discretionary parole authority under INA § 212(d)(5). DHS has the exclusive authority to temporarily release on parole "any alien applying for admission to the United States" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." INA § 212(d)(5); *see* 8 C.F.R. § 212.5(b). In *Jennings*, the Supreme Court placed significance on the fact that INA § 212(d)(5) is the specific provision that authorizes release from detention under INA § 235(b), at DHS's discretion. *Jennings*, 583 U.S. at 300. Specifically, the Supreme Court emphasized that "[r]egardless of which of those two sections authorizes . . . detention, [INA § 235(b)(1) or INA § 235(b)(2)(A)], applicants for admission may be temporarily released on parole . . . ." *Id.* at 288.

Parole, like an admission, is a factual occurrence. *See Hing Sum*, 602 F.3d at 1098; *Matter of Roque-Izada*, 29 I&N Dec. 106 (BIA 2025) (treating whether an alien was paroled as a question of fact). The parole authority under INA § 212(d)(5) is "delegated solely to the Secretary of Homeland Security." *Matter of Castillo-Padilla*, 25 I&N Dec. 257, 261 (BIA 2010); *see* 8 C.F.R. § 212.5(a). Thus, neither the Board nor Immigration Judges have authority to parole an alien into the United States under INA § 212(d)(5). *Castillo-Padilla*, 25 I&N Dec. at 261; *see also Matter of Arrabally and Yerrabelly*, 25 I&N Dec. 771, 777 n.5 (BIA 2002) (indicating that "parole authority [under INA § 212(d)(5)] is now exercised exclusively by the DHS" and "reference to the Attorney General in [INA § 212(d)(5)(A)] is thus deemed to refer to the Secretary of Homeland Security"); *Matter of Singh*, 21 I&N Dec. 427, 434 (BIA 1996)

A 226 165 933

(providing that "neither the Immigration Judge nor th[e] Board has jurisdiction to exercise parole

power"). Further, because DHS has exclusive jurisdiction to parole an alien into the United

States, the manner in which DHS exercises its parole authority may not be reviewed by an

Immigration Judge or the Board. *Castillo-Padilla*, 25 I&N Dec. at 261; *see Matter of Castellon*,

17 I&N Dec. 616, 620 (BIA 1981) (noting that the Board does not have authority to review the

way DHS exercises its parole authority).

Importantly, parole does not constitute a lawful admission or a determination of

admissibility, INA §§ 101(a)(13)(B), 212(d)(5)(A), and an alien granted parole remains an

applicant for admission, *id.* § 212(d)(5)(A); *see* 8 C.F.R. §§ 1.2 (providing that "[a]n arriving

alien remains an arriving alien even if paroled pursuant to [INA § 212(d)(5)], and even after any

such parole is terminated or revoked"), 1001.1(q) (same). Parole does not place the alien "within

the United States." *Leng May Ma*, 357 U.S. at 190. An alien who has been paroled into the

United States under INA § 212(d)(5) "is not . . . 'in' this country for purposes of immigration

law . . . ." *Abebe*, 16 I&N Dec. at 173 (citing, *inter alia*, *Leng May Ma*, 357 U.S. at 185; *Kaplan*,

267 U.S. at 228). Following parole, the alien "shall continue to be dealt with in the same manner

as that of any other applicant for admission to the United States," INA § 212(d)(5)(A), including

that they remain subject to detention pursuant to INA § 235(b)(2).

### D.  Section 236 of the INA Does Not Impact the Detention Authority for Applicants for Admission.

Section 236(a) of the INA is the applicable detention authority for aliens who have been

admitted and are deportable who are subject to removal proceedings under INA § 240, INA

§§ 236, 237(a), 240, and does not impact the directive in INA § 235(b)(2)(A) that "if the

examining immigration officer determines that an alien seeking admission is not clearly and

beyond a doubt entitled to be admitted, the alien shall be detained for a proceedings under [INA

A 226 165 933

§ 240]," *id.* § 235(b)(2)(A).[8] As the Supreme Court explained, INA § 236(a) "applies to aliens already present in the United States" and "creates a default rule for those aliens by permitting— but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Jennings*, 583 U.S. at 289, 303; *Q. Li*, 29 I&N Dec. at 70; *see also M-S-*, 27 I&N Dec. at 516 (describing INA § 236(a) as a "permissive" detention authority separate from the "mandatory" detention authority under INA § 235).[9]

Generally, such aliens may be released on bond or their own recognizance, also known as "conditional parole." INA § 236(a); *Jennings*, 583 U.S. at 303, 306. Section 236(a) of the INA does not, however, confer the *right* to release on bond; rather, both DHS and Immigration Judges have broad discretion in determining whether to release an alien on bond as long as the alien establishes that he or she is not a flight risk or a danger to the community. *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8); *Matter of Guerra*, 24 I&N Dec. 37, 39 (BIA 2006); *Matter of*

---

[8] The specific mandatory language of INA § 235(b)(2)(A) governs over the general permissive language of INA § 236(a). "[I]t is a commonplace of statutory construction that the specific governs the general . . . ." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992); *see RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (explaining that the general/specific canon is "most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission" and in order to "eliminate the contradiction, the specific provision is construed as an exception to the general one"); *Perez-Guzman v. Lynch*, 835 F.3d 1066, 1075 (9th Cir. 2016) (discussing, in the context of asylum eligibility for aliens subject to reinstated removal orders, this canon and explaining that "[w]hen two statutes come into conflict, courts assume Congress intended specific provisions to prevail over more general ones"). Here, INA § 235(b)(2)(A) "does not negate [INA § 236(a)] entirely," which still applies to admitted aliens who are deportable, "but only in its application to the situation that [INA § 235(b)(2)(A)] covers." A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 185 (2012).

[9] Importantly, a warrant of arrest is not required in all cases. INA § 287(a). For example, an immigration officer has the authority "to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation" or "to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest . . . ." *Id.* § 287(a)(2); 8 C.F.R. § 287.3(a), (b) (recognizing the availability of warrantless arrests); *see Q. Li*, 29 I&N Dec. at 70 n.5. Moreover, DHS may issue a warrant of arrest within 48 hours (or an "additional reasonable period of time" given any emergency or other extraordinary circumstances), 8 C.F.R. § 287.3(d); doing so does not constitute "post-hoc issuance of a warrant," *Q. Li*, 29 I&N Dec. at 69 n.4. While the presence of an arrest warrant is a threshold consideration in determining whether an alien is subject to INA § 236(a) detention authority under a plain reading of INA § 236(a), there is nothing in *Jennings* that stands for the assertion that aliens processed for arrest under INA § 235 cannot have been arrested pursuant to a warrant. *See Jennings*, 583 U.S. at 302.

A 226 165 933

*Adeniji*, 22 I&N Dec. 1102 (BIA 1999). Further, ICE must detain certain aliens due to their criminal history or national security concerns under INA § 236(c). *See* INA § 236(c)(1), (c)(2); 8 C.F.R. §§ 236.1(c)(1)(i), 1236.1(c)(1)(i); *see also id.* § 1003.19(h)(2)(i)(D). Release of such aliens is permitted only in very specific circumstances. *See* INA § 236(c)(2).

Notably, INA § 236(c) references certain grounds of inadmissibility, INA § 236(c)(1)(A), (D)-(E), and the Supreme Court in *Barton v. Barr*—after issuing its decision in *Jennings*—recognized the possibility that aliens charged with certain grounds of inadmissibility could be detained pursuant to INA § 236. 590 U.S. 222, 235 (2020); *see also Nielsen v. Preap*, 586 U.S. 392, 416-19 (2019) (recognizing that aliens who are inadmissible for engaging in terrorist activity are subject to INA § 236(c)). However, in interpreting provisions of the INA, the Board does not view the language of statutory provisions in isolation but instead "interpret[s] the statute as a symmetrical and coherent regulatory scheme and fit[s], if possible, all parts into an harmonious whole." *Matter of C-T-L-*, 25 I&N Dec. 341, 345 (BIA 2010) (internal quotation marks omitted) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). As the Supreme Court in *Barton* also noted, "redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication." *Barton*, 590 U.S. at 239. "Redundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text . . . ." *Id.* The statutory language of INA § 236(c)—including the most recent amendment pursuant to the Laken Riley Act, *see* INA § 236(c)(1)(E), merely reflects a "congressional effort to be doubly sure" that certain aliens are detained, *Barton*, 590 U.S. at 239.

A 226 165 933

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Humberto Luna Delgado

## DEFENDANTS

Joseph E. Freden, Kristi Noem, Todd M. Lyons, and Pamela Bondi

**(b)** County of Residence of First Listed Plaintiff   Genesee County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Aaron J. Aisen ECBA Volunteer Lawyers Project, Inc. 45 Elliott Street, Suite 1, Batavia, NY 14020 585-524-1778

Attorneys *(If Known)*

U.S. Attorney's Office - WDNY

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 96 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange<br>[ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | | |
| [ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | [ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **Habeas Corpus:**<br>[ ] 460 Alien Detainee [x]<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | [ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act<br><br>**SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609<br>**IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 2241

Brief description of cause:
Seeking order from court declaring Petitioner detained under 8 U.S.C. 1226(a) and an order allowing Petitioner to pay IJ-issued Bond

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See Instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE    10/22/2025

SIGNATURE OF ATTORNEY OF RECORD    s/ Aaron J. Aisen

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____